1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                 FOR THE EASTERN DISTRICT OF CALIFORNIA

11   JIMMIE THOMPSON,

12          Petitioner,                    No. CIV S-05-1708 GEB EFB P

13      vs.

14   THOMAS L. CAREY,

15          Respondent.            FINDINGS AND RECOMMENDATIONS

16   _____/

17          Petitioner is a state prisoner with counsel seeking a writ of habeas corpus. *See* 28 U.S.C.

18   § 2254. On February 23, 2009, the undersigned issued findings and recommendations in this

19   action, recommending that petitioner's application for a writ of habeas corpus be granted and

20   that respondent be directed to discharge petitioner from parole. In an order filed March 25,

21   2009, the district judge adopted the findings and recommendations in full, granted petitioner's

22   habeas application, and ordered that petitioner be discharged from parole within 10 days (by

23   April 8, 2009). Also on March 25, 2009, judgment was entered in favor of petitioner.

24          In the late afternoon on April 7, 2009, respondent filed a motion for relief from the

25   March 25, 2009 judgment and a request for a stay pending a decision on the motion for relief

26   from judgment. Respondent sought the ruling by "12:00 p.m. on April 8, 2009" – the day

1

1  petitioner was to be discharged from parole. On April 8, 2009, the district judge granted

2  respondent's request for a stay, stayed the March 25, 2009 order and judgment pending decision

3  on respondent's motion for relief from judgment, and referred the motion for relief from

4  judgment to the undersigned for preparation of findings and recommendations.

5                                    Motion for Relief from Judgment

6          Respondent argues he is entitled to relief from the judgment entered in this action

7  because the court's March 25 order "was based on a mistake of material fact." Mot. for Relief

8  from J. ("Resp.'s Mot.") at 1. Respondent contends that although the "Notice and Conditions of

9  Parole received by [petitioner] indicated that he was subject to a five-year parole period," "[i]n

10 preparing the documentation to discharge [petitioner] from parole, Respondent . . . learned that

11 pursuant to California Penal Code section 3000.1 [petitioner] is subject to a lifetime parole

12 period rather than the five-year period indicated on his Notice and Conditions of Parole." *Id.* at

13 2. Petitioner contends that "[d]ue to [the error on Petitioner's release document and

14 Respondent's inadvertence and mistake], the Court relied on a material mistake of fact when

15 issuing its order granting the petition for writ of habeas corpus."[1] *Id*. at 3.

16         California Penal Code section 3000.1 ("Section 3000.1") provides, in pertinent part:

17                 (a) In the case of any inmate sentenced . . . for any offense of first
                   or second degree murder with a maximum term of life
18                 imprisonment, the period of parole, if parole is granted, shall be
                   the remainder of the inmate's life.
19
                   (b) Notwithstanding any other provision of law, when any person
20                 referred to in subdivision (a) has been released on parole from the
                   state prison, and has been on parole continuously for . . . five years
21                 in the case of any person imprisoned for second degree murder,
                   since release from confinement, the board shall, within 30 days,
22                 discharge that person from parole, unless the board, for good
                   cause, determines that the person will be retained on parole. The
23                 board shall make a written record of its determination and transmit
                   a copy of it to the parolee.
24

25  _____

26      [1] Respondent specifically stated in his motion for relief from judgment that he did not
   request a hearing on the motion. Resp.'s Mot. at 1. Petitioner also did not request a hearing.

> (c) In the event of a retention on parole, the parolee shall be
> entitled to a review by the board each year thereafter.

Petitioner does not dispute that Section 3000.1 applies to him. Opp'n to Resp.'s Mot. ("Opp'n) at 3. Petitioner contends, however, that section 3000.1 cannot be applied in a manner that violates federal constitutional guarantees of due process.[2] *Id.* at 3. Petitioner contends that respondent's position regarding Section 3000.1 – that there is no effective remedy for the unconstitutional confinement of petitioner, even though petitioner would have been discharged from parole absent a showing of good cause had he not been unconstitutionally confined – offends the due process clause of the United States Constitution and simply cannot be. Opp'n at 2, 3. Petitioner argues that because he has been a model parolee, as he was a model prisoner, and his own parole agent reportedly is prepared to recommend that he be discharged from parole, respondent does not have good cause for not discharging him.[3] *Id.* at 1-2. Therefore, according to petitioner, "this court was wholly within its authority to order that [petitioner] – who was unconstitutionally confined for three years, ten months and 24 days, and has now spent an additional one year, six months, and 15 days successfully on parole, equaling more than five years since his incarceration should have ended – be discharged from parole." *Id.* at 2.

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . .

---

[2] Notably, petitioner does not contend that respondent's motion should be denied because the mistake was inexcusable or because the motion was not made on "just terms," as required by Federal Rule of Civil Procedure 60(b). Nor does petitioner contend that he should be subject to a five-year maximum parole term because of representations made to him or expectations he had regarding a five-year parole term.

[3] Petitioner submits a self-executed declaration indicating that since he was released on parole on September 27, 2007, he has been a model parolee, has had no parole violations or violations of the law, and has followed all instructions of his parole agent and his parole conditions. Decl. of Pet'r ¶ 2. Petitioner also declares that when he informed his parole agent about this court's order for his discharge from parole, the parole agent indicated to petitioner that he was eager to initiate the process and recommend discharge. *Id.* ¶ 3.

mistake, inadvertence, surprise, or excusable neglect . . . ."[4]  Here, the parties do not dispute that they were mistaken – and therefore the court was misinformed – regarding petitioner's parole term.[5]  Rather, the question at issue is whether the mistake was material to the court's March 25 order and judgment, such that relief from judgment is warranted.

The February 23 findings and recommendations and the March 25 order adopting those findings and recommendations determined that the state court decisions upholding the California Governor's November 2003 and November 2004 reversals of the parole board's findings that petitioner was suitable for parole were contrary to and/or an unreasonable application of clearly established federal law.  The reversals were not supported by "some evidence" of petitioner's

---

[4]  Although the rules of habeas corpus do not specifically provide for applications for relief from judgment, Rule 11 of the Rules Governing Section 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

[5]  Although the parties do not address whether respondent's motion was made on "just terms," as required by Rule 60(b), because the mistake/inadvertence at issue came to light only after judgment was entered and less than a day before petitioner was to be discharged on parole, the "justness" of this motion deserves mention.  Section 3000.1 was enacted in 1982 and became effective in January 1983 – before petitioner's crime occurred and long before this action was filed in 2005.  For that reason alone, it is hard to understand how respondent could have been mistaken about petitioner's parole term.  Moreover, after petitioner was released on parole in September 2007, the court directed the parties to specifically address whether petitioner was entitled to be discharged from parole.  Even then, respondent's brief misrepresented to the court that petitioner's parole term was five years.  Although respondent contends that the incorrect parole release form provided to petitioner caused the mistake/inadvertence, had respondent been diligent at any time in the several years since this case has been pending, respondent could have discovered – just as he did on the eve of discharging petitioner –  that petitioner was subject to a lifetime parole term under Section 3000.1.  This surprising lack of diligence, and the wasted judicial time and resources that resulted from it, is regrettable.  It suggests, at a minimum, grounds for denial of respondent's motion as "unjust."
      However, the court is mindful that petitioner could also have discovered and informed the court that he was subject to a lifetime parole term under Section 3000.1.  Petitioner did not do so, and instead also represented to the court that he was subject to a five year parole term.  On one occasion, petitioner also specifically acknowledged that Section  3000.1 exists, but contended that it did not apply because petitioner's murder occurred in February 2002 (even though the murder occurred in February 2003).  Pet.'s Jan. 16, 2008 Status Rep. at 8, n.4.  Therefore, because of the importance of the issue at hand and because both parties represented to the court that petitioner was subject to a five year parole term even though either party could have discovered that was not true, the court finds that the motion, on balance, is on "just terms" and will reach the merits of the motion.

4

1 current threat to public safety. The fact that petitioner is subject to a lifetime parole term rather

2 than a five year parole term does not have any impact on that determination. Regardless of

3 petitioner's parole term, for the reasons set forth in the February 23 findings and

4 recommendations and the March 25 order, petitioner's due process rights were violated by the

5 Governor's November 2003 and November 2004 reversals of the Board.

6 However, in deciding the remedy available to petitioner, the court found that if the

7 Governor had not reversed the Board's suitability finding in November 2003, petitioner's five

8 year parole term would now be complete; therefore, the court determined that petitioner should

9 be discharged from the remainder of his parole term. The determination regarding this remedy

10 was dependent upon the representations from the parties (and on the Parole Release Form) that

11 petitioner was subject to a five year maximum parole term. Accordingly, the court must

12 determine what remedy, if any, is available to petitioner now that the court is properly informed

13 regarding his parole term under Section 3000.1.

14 Petitioner contends that although Section 3000.1 imposes a lifetime parole term, it also

15 provides that a parolee who was convicted of second degree murder should be discharged from

16 parole after five years unless the parole board finds that there is good cause not to discharge the

17 parolee. According to petitioner, his excess time served in prison should be applied to that five

18 year parole term in order to mitigate the irreparable injury he suffered, making petitioner eligible

19 for discharge absent a written determination by the Board that there is good cause not to

20 discharge petitioner. Opp'n at 5. Petitioner contends that because there is no good cause not to

21 discharge him, he should be discharged from parole. *Id*.

22 Respondent counters that Section 3000.1 provides for a lifetime of parole and that the

23 five-year presumptive parole term for second degree murderers begins only upon "release from

24 confinement"; therefore, petitioner "must serve five years of continuous parole beginning from

25 his release date before being considered for discharge." Reply at 2 (citing Section 3000.1(b)).

26 ////

This was also the position of the California Court of Appeal for the Sixth District in *In re Chaudhary*, 90 Cal. Rptr. 3d 678 (Mar. 13, 2009), a very recent California case addressing this issue.  In *Chaudhary*, the California appellate court reversed a superior court judge's decision to credit the excess time Chaudhary unconstitutionally served in prison, apply it to the five-year presumptive parole term for second degree murderers under Section 3000.1(b), and direct the parole board to hold a discharge review hearing.  90 Cal. Rptr. 3d at 680.  The appellate court relied on its statutory interpretation of Section 3000.1 and held:

> Section 3000.1's five-year parole discharge eligibility requirement is expressly limited to the period of time after the parolee "has been released on parole" and requires that the parolee serve five continuous years on parole "since [the parolee's] release from confinement."  By placing these explicit limitations on the parole discharge eligibility requirement, the Legislature made unmistakably clear that a parolee must first have "been released on parole" and must then complete five continuous years on parole after the parolee's "release from confinement."  This intent explicitly precludes the application of any time spent in custody prior to release to satisfy any part of section 3000.1's five-year parole discharge eligibility requirement.

*In re Chaudhary*, 90 Cal. Rptr. 3d at 681-82.

The appellate court distinguished the cases that Chaudhary cited as support for his position that his excess prison time should be credited:

> Chaudhary relies on cases that are readily distinguishable. *In re Bush* (2008) 161 Cal. App.4th 133, 74 Cal.Rptr.3d 256 (*Bush*) involved whether time spent in prison, prior to the release date set by the Board, which exceeded the term set by the Board could be credited against the parolee's parole period.  Unlike Chaudhary, Bush, who had not been convicted of murder, was subject to a maximum five-year parole period, not lifetime parole.  The court in Bush did not consider whether in-prison custody time could be applied to section 3000.1's parole discharge eligibility requirement, because that requirement only applies to those parolees on lifetime parole.  In *McQuillion v. Duncan* (9th Cir. 2003) 342 F.3d 1012 (*McQuillion*), McQuillion was unlawfully held beyond his parole release date. The Ninth Circuit concluded that the period during which McQuillion was unlawfully incarcerated should be credited against his three-year parole period.  Because McQuillion, like Bush, was subject to a fixed parole period, not lifetime parole, the Ninth Circuit made no mention of section 3000.1's parole

1    discharge eligibility requirement.

2        The two federal district court cases that Chaudhary cites are
         similarly distinguishable. In *Martin v. Marshall* (N.D. Cal.2006)
3        448 F.Supp.2d 1143 (*Martin*), the court held, without any
         substantial analysis, that the parolee was entitled to have "actual
4        surplus time served in prison deducted from his parole period."
         Martin was not subject to section 3000.1's lifetime parole period,
5        because his offense occurred in 1979. In *Carlin v. Wong* (N.D.
         Cal. Aug. 4, 2008, No. C 06-4145 SI) 2008 WL 3183163 (*Carlin*),
6        the court held that Carlin should receive credit against his five-year
         fixed parole period for time that he had spent unconstitutionally
7        incarcerated. Carlin was not subject to section 3000.1's lifetime
         parole period, because his crime occurred prior to 1980.

8

9    *Id.* at 682. The court then concluded that "[t]here is no way to apply 'credits' to a lifetime parole

10   period. Even if we were to assume that a parolee would be entitled to credit against his or her

11   parole period for time spent unlawfully incarcerated, that would not establish that section

12   3000.1's parole discharge eligibility requirement could be satisfied with such 'credits.' The

13   extremely clear language of section 3000.1 establishes that time spent in prison prior to release

14   from confinement cannot be applied to satisfy any part of section 3000.1's five-year parole

15   discharge eligibility requirement." *Id*.

16       However, neither respondent nor the *Chaudhary* court addressed the federal due process

17   ramifications of a prisoner, such as petitioner, being excessively confined for several years.

18   Application of Section 3000.1 in the manner suggested by respondent and the *Chaudhary* court

19   would leave those prisoners without any effective remedy for their unconstitutional confinement.

20    The Ninth Circuit's ruling in *McQuillion v. Duncan*, 342 F.3d 1012, 1015 (9th Cir. 2003)

21   ("*McQuillion II*") suggests that such an application is not constitutionally acceptable.

22       In *McQuillion v. Duncan*, 306 F.3d 895, 912 (9th Cir. 2002) ("*McQuillion I*"), the Ninth

23   Circuit determined that the appropriate remedy for a state prisoner whose parole date had been

24   rescinded in violation of due process was immediate release. However, there had been at least a

25   three-year delay between the constitutional injury, i.e., the illegal restraint, and the grant of

26   habeas relief. *McQuillion II*, 342 F.3d at 1015. Thus, in response to the California Attorney

7

1  General's later assertion that the appropriate relief was release to a state-mandated three-year

2  period of parole, the Ninth Circuit explained:

3           This argument overlooks the fact that if McQuillion had been
         released on the date to which he was entitled, he would have been
4         released in May 1994.  The three-year parole, which he would
         have been required to serve if he had been released on time, has
5         long since expired.

6  *McQuillion II*, 342 F.3d at 1015.  Although the *Chaudhary* court distinguished *McQuillion* on

7  the grounds that McQuillion was subject to a fixed parole period, not lifetime parole, the

8  *Chaudhary* court did not acknowledge the rationale set forth in *McQuillion*: that a prisoner who

9  is unconstitutionally confined should be given credit for that time and placed in the position he

10  would have been in had he been released on time.  *McQuillion II*, 342 F.3d at 1015; *see also*

11  *Carlin v. Wong*, 2008 WL 3183163, at *2 (N.D. Cal. Aug. 4, 2008) ("[T]he court finds that the

12  actual surplus time that petitioner has been incarcerated beyond his parole date should be

13  credited toward his post-release parole period."); *Martin v. Marshall*, 448 F. Supp. 2d 1143,

14  1145 (N.D. Cal. 2006) (finding that the actual surplus time petitioner served in prison should be

15  deducted from his parole period).

16        As noted in the February 23 findings and recommendations, if this court finds that

17  petitioner's current custody (i.e., parole) violates his federal due process rights, it may fashion a

18  remedy "as law and justice require."  *Sanders*, 21 F.3d at 1461; *see also Bush v. Solis*, 2004 WL

19  2600141, at *2 (N.D. Cal. Nov. 16, 2004) ("When a decision violates [federal due process

20  standards], the court may provide any relief under its habeas power appropriate to remedy the

21  violation, including release.").  Respondent actually acknowledges that if petitioner is entitled to

22  have the time he served in excess of his sentence counted against his five-year minimum parole

23  term, he would be entitled to "a parole discharge review, at which the parole authority will

24  determine whether there is good cause for him to be retained on parole."  Reply at 3.

25  ////

26  ////

8

1  Therefore, in accordance with *McQuillion II*, this court finds that petitioner is entitled to be

2  placed in the position he would have been in had he been released on time.  Because it has been

3  more than five years since petitioner should have been released, petitioner is entitled to a

4  discharge determination under Section 3000.1(b).

5         Although petitioner argues that he should be discharged from parole without a discharge

6  determination (since there is no good cause not to discharge him), the fact remains that had

7  petitioner been released from prison on time and served a five year parole term, he still would

8  have been subject to the discharge determination set forth in Section 3000.1(b).  Therefore,

9  petitioner is not entitled to immediate discharge free of the requirements of Section 3000.1(b),

10  and the relief provided in the February 23 findings and recommendations and the March 25 order

11  must be modified accordingly.  Therefore, respondent's request for relief from the March 25

12  order and judgment should be granted, and the March 25 order and judgment should be modified

13  as follows.  Petitioner's application for a writ of habeas corpus should be granted for the reasons

14  set forth in the March 25 order, and respondent should discharge petitioner from parole, as

15  provided by Section 3000.1(b), unless the Board determines that there is good cause to retain

16  him on parole.

17         In accordance with the above , IT IS HEREBY RECOMMENDED that:

18         1.  Respondent's motion for relief from judgment be granted;

19         2.  The March 25, 2009 order and judgment be modified as stated above;

20         3.  Petitioner's application for a writ of habeas corpus be granted for the reasons set

21  forth in the March 25, 2009 order;

22         4.  Respondent be directed to discharge petitioner from parole within 30 days of any

23  order adopting these findings and recommendations, as provided by Section 3000.1(b), unless

24  the Board determines that there is good cause to retain petitioner on parole, makes a written

25  record of its determination, and transmits a copy of it to petitioner; and

26  ////

9

1    5.  In the event petitioner is retained on parole, respondent be directed to provide

2  petitioner with a review by the Board each year thereafter, as provided by Section 3000.1(c).

3       These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after

5  being served with these findings and recommendations, any party may file written objections

6  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

7  to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

8  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

9  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  May 5, 2009.

11  _____

    EDMUND F. BRENNAN

12  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26